IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DISTRICT

| | | |
|---|---|---|
| **MARCUS WEBSTER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-CV-000641-MHT |
| | ) | (WO) |
| **CITY OF MONTGOMERY,** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PRETRIAL HEARING

A Pre-Trial Hearing was held in this case on December 7, 2023, wherein the following actions were taken:

**1.    PARTIES AND TRIAL COUNSEL:**

**Plaintiff Marcus Webster**

Plaintiff is represented by Scott T. Morro, attorney with Morro Law Center, LLC.

**Defendant City of Montgomery** – The City of Montgomery is a municipal corporation located in Montgomery County, Alabama. Defendant City of Montgomery is represented by Hope Curtis Hicks, Allison Alford Ingram, and Graham R. Neeley with Ball, Ball, Matthews & Novak, P.A. Defendant is also represented by R. Randolph Neeley with the City of Montgomery.

COUNSEL APPEARING AT PRETRIAL HEARING:

For the Plaintiff – **Scott T. Morro**

For the Defendant – **Allison A. Ingram**

**2.    JURISDICTION AND VENUE:**

Jurisdiction and venue are both proper in this Court pursuant to 28 U.S.C. §§1331 and 1343(a)(3). No jurisdictional questions remain.

**3.    PLEADINGS:** The following pleadings and amendments were allowed:

Complaint (Doc. 1)

City of Montgomery's Answer to Plaintiff's Complaint (Doc. 8)

**4.    CONTENTIONS OF THE PARTIES:**

   **(a)    Plaintiff**

      i.    The Plaintiff contends that the Defendant racially discriminated against him in violation of Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto causing the Plaintiff to suffer embarrassment, humiliation, shame, damage to his reputations, emotional distress, emotional and physical pain, aguish, as well as loss of wages as a direct consequence of the Defendant's unlawful conduct.

      ii.    The Plaintiff further contends that the Defendant violated his 14th Amendment substantive due process rights causing the Plaintiff to suffer embarrassment, humiliation, shame, damage to their reputations, emotional distress,

emotional and physical pain, anguish, as well as loss of wages as a direct consequence of the Defendant's unlawful conduct.

    iii.  The Plaintiff finally contends that the Defendant retaliated against him by suspending him, demoting him, and limiting his off-duty employment causing the Plaintiff to suffer embarrassment, humiliation, shame, damage to his reputation, emotional distress, emotional and physical pain, anguish, as well as loss of wages as a direct consequence of the Defendant's unlawful conduct.

  **(b)**  **Defendant**

    i.  The Defendant adopts and incorporates all defenses raised in its Answer to the Plaintiff's Complaint.

    ii.  On September 27, 2021, Plaintiff filed a two-count claim for racial discrimination and retaliation in violation of Title VII. Plaintiff has not asserted a substantive due process claim in his Complaint.

    iii.  There are no significant factual disputes in this case. Webster admits that he performed off duty police work; that he had access to all of the Montgomery Police Department (MPD) polices, including those applicable to off-duty employment; that he did not live on the property where he was performing off-duty work but was instead paid $43,560.00 for this off-duty outside employment; and that he did not notify the off-duty coordinator that he was not living on property and

was instead being paid. His conduct in living off-property qualified as Off-Duty employment rather than work as a Courtesy officer. As such, there were different requirements which Webster did not meet, and Webster was punished for this misconduct.

      iv.    Although Webster asserts that the City was "mistaken" and that he was not guilty of the misconduct for which he was disciplined, this Defendant contends the issue is not whether he was guilty or not guilty, but whether the City acted discriminatorily. Webster has to show more than the employer was mistaken in its decision because an employer who makes an employment decision under a mistaken but honest belief that the employee violated a work rule is not liable for discriminatory conduct.

      v.    The Defendant contends Webster has failed to come forward with evidence of similar misconduct by a comparator outside of his race who was treated more favorably. He has not established a convincing mosaic of circumstantial evidence. There are no statements of racially derogatory language. There is no evidence to indicate that non-African American similarly situated police officers are systematically treated better than Webster. Finally, there is no evidence of pretext.

      vi.    Webster alleges that the Defendant retaliated against him for his "support" of Officer Antavoine Ferguson, who was involved in a use of force incident in June 2020 and was later terminated in October 2020, for said incident.

Webster's retaliation claim fails as a matter of law because there is no evidence he engaged in protected conduct or that a causal connection existed between Webster's support of Ferguson and Webster's disciplinary actions. Webster's generalized "support" of his friend Ferguson was not protected activity. In addition, there is no evidence that the decisionmaker was aware of this generalized "support." Finally, there is no way that that the investigation of Webster was in retaliation for his support of Ferguson because the investigation of Webster had already been opened *before* any alleged "support" by him.

For all of these reasons, and the reasons set forth in the motions filed with the Court, there is no evidence of racial discrimination and Webster's action is due to be dismissed.

5.  **STIPULATIONS BY AND BETWEEN THE PARTIES:**

(a)     The Parties stipulate that the Plaintiff was employed as a police officer with the City of Montgomery.

(b)     The Parties stipulate that the Plaintiff was notified by Chief Deputy Reaves that he was the subject of an investigation regarding off-duty employment.

(c)     The Parties stipulate that the Plaintiff was called into Chief Deputy Reaves' office, where he was informed by Chief Deputy Reaves that the Plaintiff had violated numerous policies and would be suspended for twenty (20) days,

demoted, and banned from working off duty jobs for one year. The Parties further stipulate that Major C. Coughlin was a witness to this meeting.

(d)   The Parties stipulate that the Plaintiff scheduled a meeting with the Chief of Police, Ernest Finley, to appeal the recommended discipline.  The meeting was held and the discipline was upheld by Chief Finley.

(e)   The Parties stipulate that the Plaintiff appealed Chief Finley's decision to Mayor Reed and a hearing was held in front of Mayor Reed's designee, Retired Circuit Judge Charles Price.  Following the hearing, Mayor Reed upheld the discipline.

(f)   The Parties stipulate that the Plaintiff appealed Mayor Reed's decision to the Montgomery City-County Personnel Board. The Board held a hearing and upheld the discipline.

(g) The Parties stipulate that the Plaintiff appealed the Montgomery City-County Personnel Board Order to the Circuit Court of Montgomery County.  Judge Hardwick has yet to rule on the Circuit Court appeal.

***

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last three days, are set for February 5, 2024, at 10:00 a.m. at the United States Courthouse in Montgomery, Alabama;

6

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the ow), three copies of the exhibit list and two extra copies of each photostatically reproducible exhibit.  Any publication of exhibits to the jury will be done through use of the ELMO in the courtroom, and no exhibit is to be shown or published to the jury without it being admitted into evidence.  Any exhibits which the parties wish to use in their opening statements can be shown to the jury if the parties jointly stipulate that the exhibit is admitted into evidence in advance of trial.  With respect to demonstratives, they may be used in voir dire, opening statements, examination of witnesses, and in closing statements if (a) they accurately reflect the evidence, and (b) they have been shown to opposing counsel in advance of trial such that opposing counsel has sufficient time to review the

demonstrative and timely raise any objections to the court with respect to the use thereof;

(4) Trial briefs ((a) summarizing the evidence to be presented at trial, (b) setting forth the elements of each and every claim and defense at issue and how the evidence does or does not satisfy those elements, and (c) addressing any evidentiary issues that may arise at trial) are required to be filed by January 29, 2024;

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (Doc. 41) entered by the court on September 14, 2023; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by order of the court.

DONE, this the 11th day of December, 2023.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**

8